## MARTIN *v.* FARNHAM.

Evidence showing that a witness had made statements substantially different from those he now makes, and inconsistent with them, in regard to material matters, is admissible to affect his credit.

Statements made by a witness relative to his state of feeling towards a party, are regarded as material, and may be so contradicted.

A caption of a deposition, which states that it is to be used at the court, &c., to be holden at, &c., on a day specified, which is the first day of an adjourned term, is sufficient.

ASSUMPSIT. The suit was commenced, January 15, 1850, to recover the amount of two notes. One of the notes was confessed, and the defendant is sought to be charged as indorser on the other. The note in dispute was given April 26, 1848, for $330, by one W. Eaton to the defendant or order, by him indorsed to Asa Martin, and by said Asa transferred to the plaintiff by an indorsement in these words : " Asa Martin—not liable." Asa Martin testified to a sufficient demand and notice, and the case turned upon his credibility, in the opinion of the jury, under the circumstances. Asa Martin is the plaintiff's father. When the witness was called, he was objected to, and the plaintiff's admissions were proved, which tended to show Asa Martin liable to share in any loss upon the note ; and thereupon the plaintiff executed a release to the witness, and he was admitted. He testified, upon his direct examination, that a few days before the commencement of the action, he sold and transferred both notes to the plaintiff for $435, (which was about $40 less than the amount due upon them,) and received payment for them by a claim for labor his son had against him, a wagon, and a note for the balance. In answer to a question put by the plaintiff's counsel, " Have you any interest in the notes, or in the result of this suit ?" the witness answered, " I do not know that I have any." The defendant afterwards proved the plaintiff's admissions, made after the suit was brought, tending to show that Asa

Martin was still interested in the note, and liable to make good any loss on account of it, and then offered certain declarations of Asa Martin to one Boynton. The plaintiff's counsel objected, that the evidence proposed did not tend to contradict Asa Martin upon any point, or if upon any, only upon a collateral matter, not material to the issue. The court were of opinion that the testimony of Boynton tended to contradict the witness, Martin, in respect to the question of the actual sale of the notes, and his relation to the suit; and that this question was still material as affecting the degree of credit due to the witness, notwithstanding the technical release; for the jury might believe that the father and son would act precisely as if no release had been passed; and that if up to that time Asa Martin was responsible for the debt, and so interested in the suit, the effect of such interest upon his feelings and testimony would not be wholly removed by the release;—and the objection was overruled, and the evidence received.

Boynton's testimony was, that in January, 1850, in a conversation with Asa Martin about the use of a certain musical instrument, which Martin had hired of W. Eaton, Martin claimed to retain the sum due for the use, and assigned as a reason for the claim, that he should lose enough by Eaton any way, and meant to keep what he could. Farnham had notified him that he would not be holden on the note, and he, Martin, expected to lose it;—he had let his son have the note, but his son would not lose it;—" of course (he said,) I shall have to lose it, and mean to save what I can." Upon his cross-examination, Boynton said he could not fix the time of this conversation nearer than from the 20th of December, 1849, to the 20th of January, 1850.

The defendant offered the deposition of P. Hardy, taken, upon a notice and appearance, in December, 1850. The justice certified in the caption that the deposition was taken to be used in the action between Jacob Martin and Job W.

Farnham, to be heard and tried at the court of common pleas to be holden at Plymouth, in and for the eastern judicial district of the county of Grafton, on the fourth Tuesday of January, 1851. The plaintiff's counsel objected, that the term of the court was not properly described, but the court admitted the deposition. A verdict was returned for the defendant, which the plaintiff moved to set aside, because of said rulings.

*N. B. Bryant,* for the plaintiff.

*Pike* and *H. A. Bellows,* for the defendant.
I. The interest of the witness is not a collateral question, but is relevant. It has been decided that the relation of the witness to one of the parties is not irrelevant, as that he was hostile to the prisoner. *Yewin's case,* 2 Camp. 638, n; *Atwood* v. *Wilton,* 7 Conn. 66; or that she was the plaintiff's kept mistress. *Thomas* v. *David,* 7 C. & P. 350; 1 Greenl. Ev. § 451; 1 Stark. Ev. 134; 2 Cow. Phil. Ev. n. 509, page 726; and cases cited, and among them, *Moore* v. *Viile,* 4 Wend. 420. The case of *Titus* v. *Ash,* 4 Foster's Rep. 319, is directly in point.
II. The testimony of Boynton contradicts the statement of Asa Martin, that he had no interest; and that being a matter relevant to the issue, he can be contradicted in this way as well as by showing directly an interest.
III. There was an adjourned sitting on the fourth Tuesday of January, 1851, and that has in practice been regarded as a distinct term in regard to taking depositions. It is familiarly called an adjourned term, and may well enough be regarded as a term within the rule; and so it has been held.

BELL, J. The evidence of Boynton seems to us admissible. It tends to contradict the witness, Martin, as to the material fact of an actual and real transfer of the note in

question to the plaintiff. Martin's testimony was admissible only on the ground that the note had been so transferred. A formal transfer had been made; but any circumstance which tended to satisfy the jury that the transfer and apparent payment of the consideration for it was mere form, was calculated to destroy the weight of the witness's evidence, both by the contradiction, and by showing a secret interest to misrepresent. In terms, there is no contradiction, but in effect, such evidence tends to satisfy a jury that the whole account of the transfer is substantially a falsehood and deception. That the account given by the witness is substantially inconsistent with that given upon the stand, is all which is required to render the evidence admissible on the ground of contradiction. The discovery of such a falsehood in substance, or of such an interest, artfully concealed, in the result of the suit, would naturally go far to destroy all the credit to which the witness might seem otherwise entitled.

The evidence on this subject was in no way affected by the release. The release was made by the plaintiff to the witness, and discharged any claim which the plaintiff might have against him; but the tendency of the proof was to show that the transfer of the note was not real, and that the plaintiff, instead of having in any event a claim against the witness, was himself a mere trustee for the witness, holding and prosecuting the note for his benefit, and liable to account to him for whatever might be recovered in the action. To discharge such a claim, a release would rather be required from the witness to the plaintiff. The evidence to show such accountability of the plaintiff, and interest in the witness, was not rendered any the less material by the fact that the plaintiff had made a release to him.

The evidence of this witness also tends to show that the witness, Martin, had heretofore given an account of his situation and relation to this case, substantially different from and inconsistent with that he now gives upon the witness

stand.   He now represents himself to the jury as having no interest in these notes, or in the result of the suit; in effect, that he was absolutely disinterested ; while he had stated to this witness that though he had let his son have the note, yet if it was lost, his son would not lose it—of course he should have to lose it, and meant to save what he could. This statement seemed to show that he must still have nearly as strong feelings in the case, and must testify under nearly as strong a bias, as if he were in fact and in law the party in interest.

It is always a material question, what is the state of feeling of a witness towards one or both of the parties.   It is always proper upon a cross-examination, if there is supposed to be any occasion for it, to inquire whether the relations of a witness are those of a dependent or friend to one of the parties, or whether he has any bias, or prejudice, or hostility, which might affect his testimony, or induce a jury to distrust his statements, or weigh them with care.   The statements made, in answer to such inquiries, by the witness, are always regarded as material, and may be contradicted directly ; or it may be shown that the witness has himself made representations substantially different.   This principle is clearly established by the authorities cited for the defendant, particularly the case of *Titus* v. *Ash.*

In this view, and because the testimony of Boynton was calculated to affect the credit of Martin, by showing that in his own opinion he would be the person who would lose the note in case the action should fail, we think the evidence was properly admitted.

The objection to the deposition is not well founded.   The objection is not that the deposition was taken after the Tuesday next preceding the commencement of the term, contrary to the general rule of the court.   If such an objection could have been taken, it must now be held to have been waived.   The exception is, that the term of the court is not properly described.   The Revised Statutes, chap. 188,

§ 20, provide that the magistrate taking any deposition shall certify such oath, with the time, place and cause of taking the same, and the case and court in which it is to be used, &c. And the question is, if the court is sufficiently described. The language of the certificate is, " to be heard, &c., at the court of common pleas to be holden at P., in the eastern judicial district of the county of G., on the fourth Tuesday of January, 1851." Here the court is accurately described by its title, and the time when it was in fact to be holden at an adjourned term. No mistake is possible as to the court intended. The courts of common pleas are bound judicially to take notice of their own terms, both general and special, and they must officially know that a term was to be holden on the fourth Tuesday of January, 1851. It might be more accurate to describe the court as to be holden by adjournment from its stated session, but the designation given, if not the best, is yet clear and unambiguous, and every purpose of the statute is effectually answered, and there is a sufficient compliance with its terms.

If the time of holding the court had been entirely omitted in the caption, there could hardly be a doubt of the court at which the evidence was to be used.

*Judgment on the verdict.*